**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-24-03094-001-TUC-JAS (MSA) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Ebony Kenyetta Martin, | |
| Defendant. | |

Defendant Ebony Kenyetta Martin is charged with alien smuggling and conspiracy to commit alien smuggling. She moves to suppress the evidence against her on the ground that it was obtained in violation of the Fourth Amendment. The Court will recommend that her motion be denied.

**Background**

At around 7:00 p.m. on April 29, 2024, an anonymous person called the U.S. Border Patrol Station in Bisbee, Arizona and reported seeing individuals in camouflage clothing exit the brush and enter a red Hyundai. (Tr. 19–21, 47, 54, 67.)[1] The caller stated that the load-up had occurred near the intersection of Barnett Road and Honeywood Way. (Tr. 20.) That intersection is in a small community about three miles north of the United States–Mexico border. (Tr. 11, 108–10.) At the time, there was a large number of illegal crossings occurring along the border south of the Barnett-Honeywood intersection, and it was not unheard of for agents to see 30 to 40 crossings per shift. (Tr. 76.)

---

[1] "Tr." refers to the transcript of the November 5 evidentiary hearing. (Doc. 45.)

1    The call was taken by Agent Van Hartwigsen. (Tr. 19–20.) He took some notes and
2 then put out a call to agents in the field, stating: "A red Hyundai loaded at Honeywood,
3 headed up to Naco Highway." (Tr. 20–22; Pl.'s Ex. 9 at 0:02–0:08.) One of the field agents
4 asked for a repeat of the location, and Agent Hartwigsen stated: "It was on Honeywood off
5 of Barnett, headed towards Naco Highway." (*Id.* at 0:09–0:16.) A different agent asked for
6 confirmation that the suspect vehicle was a "red Hyundai," and Agent Hartwigsen stated:
7 "Yeah, Hyundai, Honda, something like that. Little sedan." (*Id.* at 0:21–0:32.) Over the
8 next minute, an agent saw a red sedan on Naco Highway and followed it to a nearby
9 residence. (*Id.* at 0:39–1:31.) A few seconds after the agent reported the sedan's location,
10 a different agent stated that he was going to take a closer look at a Hyundai that he believed
11 had turned east onto State Route 92. (*Id.* at 1:38–1:48.) Seconds later, and about two
12 minutes after Agent Hartwigsen put out his initial call, agents spotted a red Hyundai Santa
13 Fe (an SUV), driving eastbound on State Route 92. (*Id.* at 1:54–2:02.)

14    Agent Kevin Snyder was driving on State Route 80 when he heard the initial call
15 and agent responses. (Tr. 76.) He responded to the report of the red SUV by positioning
16 his vehicle at the traffic circle at the end of State Route 92 east. (Tr. 80.) He saw the SUV
17 enter the circle and then exit onto State Route 80 west. (Tr. 83.) Agent Snyder knows that
18 it takes about ten minutes to get from the Barnett-Honeywood intersection to the circle,
19 and he estimated that the SUV reached the circle about nine minutes after Agent
20 Hartwigsen's initial radio call. (Tr. 84.) Agent Snyder got behind the SUV and requested a
21 records check. (Tr. 84.) The check showed that the vehicle was registered out of Oro
22 Valley, Arizona and had never been encountered at a port of entry or immigration
23 checkpoint. (Tr. 84–85.) This aroused Agent Snyder's suspicions, because nine out of ten
24 smugglers he encounters are from Tucson, Phoenix, or the surrounding towns. (Tr. 84–85.)
25 In addition, Agent Snyder knows from experience that smugglers commonly use State
26 Route 80 to exit the Naco area because they know that that route is patrolled less so than
27 others. (Tr. 89–90.)

28    Agent Snyder initiated a vehicle stop. (Tr. 103.) The stop revealed that Defendant

was the driver and that the passengers were undocumented, so Defendant was arrested and charged with alien smuggling and conspiracy to commit alien smuggling. (Doc. 1.)

**Discussion**

Defendant contends that the agents lacked reasonable suspicion of alien smuggling, making the vehicle stop an illegal seizure under the Fourth Amendment. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (holding that roving border patrol stops must be supported by reasonable suspicion). The Court disagrees.

Reasonable suspicion exists when, based on the "totality of the circumstances," an officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). This standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Still, it requires more than a mere "hunch" that criminal activity is occurring. *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). In determining whether reasonable suspicion existed, respect must be given to the officer's "experience and specialized training." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 418). That said, the reasonable-suspicion test is objective. *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016). This means that reasonable suspicion does not turn on the officer's subjective opinions about the facts. *Id.*

Here, the totality of the circumstances included several factors: (1) the anonymous tip, (2) the vehicle's proximity to the border, (3) the vehicle's registration and lack of an immigration checkpoint or border crossing history, and (4) the vehicle's route. In analyzing these factors, the Court must refrain from using a "divide-and-conquer" approach. *Arvizu*, 534 U.S. at 274. That said, to explain how each factor weighs in the greater analysis, it is necessary to address them separately. Each factor is considered from the perspective of an objectively reasonable agent with Agent Snyder's six years of experience, which includes participation in hundreds of smuggling cases. (Tr. 55, 77.)

The first factor is the anonymous tip that individuals wearing camouflage had exited the brush and entered a red Hyundai near the intersection of Barnett Road and Honeywood

1  Way. (Tr. 20–21, 47, 53–54.) An anonymous tip supports an officer's reasonable suspicion
2  when it has "sufficient indicia of reliability," *Alabama v. White*, 496 U.S. 325, 332 (1990),
3  both "in its assertion of illegality" and "in its tendency to identify a determinate person,"
4  *Florida v. J.L.*, 529 U.S. 266, 272 (2000). "[I]f a tip has a relatively low degree of
5  reliability, more information will be required to establish the requisite quantum of
6  suspicion than would be required if the tip were more reliable." *White*, 496 U.S. at 330.

7      The tip in this case bore at least four indicia of reliability. First, the caller claimed
8  eyewitness knowledge, and that knowledge satisfied both the criminality and identification
9  requirements: the caller saw a specific vehicle engaging in what plainly appeared to be
10 alien smuggling. (Tr. 20.) "That basis of knowledge lends significant support to the tip's
11 reliability." *Navarette v. California*, 572 U.S. 393, 399 (2014). Second, agents corroborated
12 aspects of the tip when, a few minutes after it was called in, they observed a red Hyundai
13 a few minutes away from the reported load-up spot. (Tr. 108–09; Pl.'s Ex. 9 at 1:37–2:02.)
14 Such corroboration lends "some degree of reliability to the other allegations made by the
15 caller." *White*, 496 U.S. at 332. Third, the short timeline "suggests that the caller reported
16 the incident soon after [it occurred]," and "[t]hat sort of contemporaneous report has long
17 been treated as especially reliable." *Navarette*, 572 U.S. at 399. Fourth, the tip provided
18 information "narrowing the likely class of informants." *United States v. Terry-Crespo*, 356
19 F.3d 1170, 1174 (9th Cir. 2004) (quoting *J.L.*, 529 U.S. at 275 (Kennedy, J., concurring)).
20 Honeywood Way is a short dirt road that provides access to only two or three homes.
21 (Tr. 70, 107; Pl.'s Ex. 7.) Its street sign is behind a large utility pole and is difficult to see
22 from Barnett Road, and there are no more than 15 homes near the Barnett-Honeywood
23 intersection. (Tr. 107–08; Pl.'s Exs. 5, 6, 7.) The caller's familiarity with this area
24 suggested that he or she was one of the few residents who lived there.

25     While the tip was reliable enough to justify further investigation, Agent Hartwigsen
26 did not relay it to the other agents with total accuracy. He initially stated: "A red Hyundai
27 loaded at Honeywood, headed up to Naco Highway." (Pl.'s Ex. 9 at 0:01–0:08.) However,
28 in response to another agent asking for confirmation that the vehicle was a "red Hyundai,"

1  he stated: "Yeah, Hyundai, Honda, something like that. Little sedan." (*Id.* at 0:28–0:32.)
2  Agent Hartwigsen's incorrect statement lessens the suspicion generated by the tip (it misled
3  agents into following a red sedan), but it does not render the tip wholly irrelevant. Despite
4  the misinformation, it remains true that the tip alerted the field agents to an illegal pickup
5  that had just occurred; that the agents heard that the vehicle involved could be a "red
6  Hyundai"; and that, within a few minutes after the radio call, an agent spotted a red Hyundai
7  near the reported load-up spot. Given the foregoing, the Court finds that the tip generated
8  some suspicion. More, however, was required to justify the stop.

9        The second factor is Defendant's proximity to the United States–Mexico border.
10  The border uniquely implicates immigration and smuggling offenses, *see United States v.*
11  *Montoya de Hernandez*, 473 U.S. 531, 538–39 (1985), *United States v. Martinez-Fuerte*,
12  428 U.S. 543, 551–53 (1976), so proximity to it can support a reasonable suspicion of those
13  offenses, *Brignoni-Ponce*, 422 U.S. at 884. Here, the reported load-up spot was about three
14  miles north of the border, and Defendant was first observed just north of that area. (Tr. 89,
15  109–10.) Further, at the time of this incident, agents were seeing a large number of
16  crossings in the border area south of Honeywood Way. (Tr. 76.) Defendant's proximity to
17  this high-alien-traffic area generated further suspicion. *See United States v. Diaz-Juarez*,
18  299 F.3d 1138, 1140, 1142 (9th Cir. 2002) (finding that the defendant's five-mile proximity
19  to the border generated suspicion).

20        The third factor is the vehicle's registration and lack of an immigration checkpoint
21  or border crossing history. As noted, the reasonable-suspicion analysis must account for
22  officer experience. *Arvizu*, 534 U.S. at 273. In Agent Snyder's experience, smuggling
23  organizations tend to "recruit people from larger metropolitan cities and their outlying
24  towns," and "nine out of 10" smugglers that he encounters are from "Tucson, Phoenix, or
25  one of the surrounding towns." (Tr. 84.) Before stopping Defendant's vehicle, Agent
26  Snyder ran a registration check and learned that the vehicle was registered out of Oro
27  Valley, which is just north of Tucson. (Tr. 84.) He also learned that the vehicle had never
28  been encountered at a checkpoint or port of entry. (Tr. 85.) This lack of any connection to

the border could give a reasonable agent with Agent Snyder's experience reason to think that the vehicle was out of place and potentially engaged in wrongdoing. This factor generated further suspicion. *See Arvizu*, 534 U.S. at 277 (finding that the agent reasonably inferred, based on his "observations" and "experience," that the defendant was engaged in smuggling).

The fourth factor is Defendant's use of State Route 80. (Tr. 83.) A defendant's use of a common smuggling route can generate suspicion. *See Arvizu*, 534 U.S. at 277 (finding that the defendant's use of a "little-traveled route used by smugglers" generated suspicion). Agent Snyder testified that smugglers commonly use State Route 80 when exiting the Naco area, as they know that that route is patrolled less so than others. (Tr. 89–90.) Defendant's use of this road thus generated suspicion. This is true even though most of the traffic on State Route 80 is presumably lawful. *See United States v. Valdes-Vega*, 738 F.3d 1074, 1079 (9th Cir. 2013) (en banc) (finding that the defendant's use of Interstate 15, a major highway, supported a vehicle stop because agents "reported that Interstate 15 is commonly used by smugglers coming from Mexico").

The foregoing factors added up to reasonable suspicion. Agents received a tip about a load-up that had just occurred near the border, and they had reason to think that the tipster was a local who had provided reliable information. Although there was initial uncertainty about the suspect vehicle, Defendant's vehicle matched one of the reported descriptions, was spotted where one would expect it to be given the amount of time that had passed, and further stood out because of its out-of-town registration and route. These circumstances fit a pattern that the agents had seen before. This combination of factors was sufficient to give someone with Agent Snyder's experience an objective, particularized basis for suspecting Defendant of alien smuggling.

Defendant's arguments to the contrary are not persuasive. She first takes issue with any reliance on the anonymous tip. She says that there was no evidence that the tipster had eyewitness knowledge or was reporting a crime that had just occurred. (Tr. 114–15.) That is incorrect. Agent Hartwigsen testified that the caller stated that he or she "saw" the load-

up, and that the caller "describe[d]" what the suspected aliens were wearing. (Tr. 20, 53.) This establishes that the caller had eyewitness knowledge. Furthermore, as discussed above, the timeline of events supports the inference that the call was made at the time the crime was occurring. Defendant also says that the agents could not have relied on the tip, because they stopped an SUV although Agent Hartwigsen had radioed out that the suspect vehicle was a "little sedan." (Tr. 115–17.) However, Agent Hartwigsen also stated that the vehicle was a "red Hyundai" and possibly a "Honda." (Tr. 46.) While the uncertainty of the vehicle description lessens the reliability of the tip, that uncertainty could have led an objectively reasonable agent to keep an eye out for any suspicious vehicles in the area. As noted, within minutes of the tip, agents saw a red Hyundai turn east onto State Route 92, and further investigation showed that the vehicle was not local to the area.

Defendant further argues that the testimony about her registration and border history deserves little weight because "there is obviously a whole host of lawful reasons that somebody from Oro Valley could be visiting Bisbee." (Tr. 116–17.) But this argument ignores that the agents were "entitled to assess the facts in light of [their] experience in detecting illegal entry and smuggling." *Brignoni-Ponce*, 422 U.S. at 885 (citing *Terry*, 392 U.S. at 27). It also ignores that "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct," *Arvizu*, 534 U.S. at 277, and that even factors that are "quite consistent with innocent travel" can, when considered together, "amount to reasonable suspicion." *Sokolow*, 490 U.S. at 9. In the context of the tip and timeline, and accounting for the agents' experience, a reasonable agent could have found the vehicle suspicious.

Finally, Defendant highlights the absence of factors that were found relevant in other cases. (Tr. 119–22.) For instance, she points out that her vehicle did not appear heavily loaded, and that she did not exhibit erratic driving behavior. *See Brignoni-Ponce*, 422 U.S. at 885 (stating that those can be relevant factors). However, each case turns on its own facts. The question here is not which facts are missing, but rather whether the facts available to the agents amounted to reasonable suspicion. The Court finds that they did.

**Conclusion**

The stop was supported by reasonable suspicion of alien smuggling. Therefore, the Court recommends that Defendant's motion to suppress (Doc. 23) be **denied**.

This recommendation is not immediately appealable to the United States Court of Appeals for the Ninth Circuit. The parties have 14 days to file specific written objections with the district court. Fed. R. Crim. P. 59(b)(2). The parties have 14 days to respond to objections. The parties may not file replies on objections absent the district court's permission. A failure to file timely objections may result in the waiver of de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 13th day of December, 2024.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge